UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARLENI JOSEFINA MUNOZ,

Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

Respondents.

Case No. C26-2383-SKV

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

Petitioner Marleni Josefina Munoz is currently detained by U.S. Immigration and

Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma,

Washington. She filed, through counsel, this petition for writ of habeas corpus under 28 U.S.C.

§ 2241, challenging her May 18, 2026, redetention as violative of the Administrative Procedure

Act ("APA") and the Fifth Amendment. Dkt. 1 at 16-23. Respondents filed a return (Dkt. 5),

along with a sworn declaration from U.S. Department of Homeland Security ("DHS")

Deportation Officer Andre Ouk (Dkt. 6) ("Ouk Decl."), and an unsworn declaration from their

counsel Peter Clark (Dkt. 7) ("Clark Decl."). Petitioner filed a traverse in reply. Dkt. 8

Having considered the parties' submissions and the governing law, the Court GRANTS

in part the petition (Dkt. 1) for the reasons set forth below.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

## I.    BACKGROUND

Petitioner is a native and citizen of Venezuela, who first entered the United States from Mexico on June 13, 2023, near Eagle Pass, Texas.  Ouk Decl., ¶¶ 3-4.  She was encountered by border patrol and allowed to voluntarily return to Mexico.  *Id.* ¶ 4.  On August 28, 2023, Petitioner applied for admission to the United States at the Brownsville, Texas Port of Entry but lacked valid entry documents.  *Id.* ¶ 5; Dkt. 1, ¶ 3; Clark Decl., ¶ 2, Ex. 1 at 3.  DHS issued Petitioner a Notice to Appear ("NTA") the same day, charging her with being inadmissible under the Immigration and Nationality Act ("INA") and directing Petitioner to appear for an immigration hearing on October 31, 2024, in West Valley, Utah.  Ouk Decl., ¶ 5; *see* Clark Decl., ¶ 2, Ex. 2 at 2 (NTA).  She was thereafter paroled into the United States.  Ouk Decl., ¶ 6.  The record does not contain any evidence of Petitioner's parole, such as the statute under which it was authorized, the length, termination date, or conditions imposed, if any.

After her release, Petitioner filed for asylum, obtained work authorization, and lived with her U.S. citizen husband in the Salt Lake City area.  Dkt. 1-4, ¶¶ 6-7.

On May 17, 2026, Petitioner was arrested in Sandy City, Utah Police Department for "Assault – Domestic Violence."  Ouk Decl. ¶ 7.  The next day, ICE detained Petitioner at the Salt Lake County Metro Jail "due to her pending criminal charges."  *Id.* ¶¶ 8-9.  Petitioner was transferred to the NWIPC on May 26, 2026, where she remains detained.  *Id.* ¶ 10.

On June 25, 2026, Petitioner's criminal matter resolved after she pled to an amended infraction and was sentenced to a fine.[1]  Dkt. 1-6.

---

[1] It appears Petitioner appeared through counsel for her criminal plea and sentencing hearing, as she was in custody at the NWIPC.  *See* Dkt. 1-6 at 2.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

On July 14, 2026, an immigration judge denied Petitioner's applications for relief from removal and ordered Petitioner removed to Venezuela.  Ouk Decl., ¶ 12.  Petitioner appealed the removal order to the Board of Immigration Appeals on July 22, 2026.  Dkt. 8-1.

On July 8, 2026, Petitioner filed the instant petition.  She seeks: (1) release or alternatively, a bond hearing before a neutral decisionmaker, at which the Government would bear the burden to prove by clear and convincing evidence that detention is necessary, (2) a permanent injunction prohibiting the Government from redetaining Petitioner after release, absent written notice and a pre-deprivation hearing, (3) attorneys' fees and costs, and (4) any other relief the Court deems just and proper.  Dkt. 1 at 24.

## II.      LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026).  "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," and may dispose of habeas matters "as law and justice require."  *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); 28 U.S.C. § 2243.

## III.      DISCUSSION

Petitioner's first two claims assert that her redetention was both an abuse of DHS's discretion and not in accordance with the law, in violation of the APA.  Dkt. 1, ¶¶ 74-84 (Count 1), ¶¶ 85-95 (Count 2).  Her third claim challenges her redetention on due process grounds and asserts that the Government's revocation of her release without pre-deprivation process deprived her of her liberty interest in remaining free from detention. *Id.* ¶¶ 96-110.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

Respondents contend Petitioner is mandatorily detained under 8 U.S.C. § 1225(b) as an "arriving [noncitizen]."  Dkt. 5 at 6-7.  As for Petitioner's APA claims, Respondents argue the Court lacks subject matter jurisdiction to hear them.  *Id.* at 7-8.

For the following reasons, the Court finds release is warranted under Petitioner's Due Process claim.  It therefore does not reach her APA claims.

### A.      Statutory Detention Authority

Petitioner does not discuss the statutory grounds for her detention in her petition, but Respondents seek to justify it as mandatory under § 1225(b)(1)—arguing that, because Petitioner was paroled into the United States, as opposed to being conditionally released on her recognizance, she remained an "arriving [noncitizen]" subject to mandatory detention under § 1225(b)(1) upon her parole's termination.  Dkt. 5 at 6-7.

Section 1225 authorizes the Government to detain certain noncitizens seeking admission into the United States.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018).  Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)."  *Id.* at 297.  Noncitizens are considered "applicants for admission" to the United States when they "arrive[]" in the United States or are "present" in this country but have "not been admitted."  8 U.S.C. § 1225(a)(1).  "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."  *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation."  *Id.* (citing § 1225(b)(1)(A)(i)).  Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process."  *Id.* (citing

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

§ 1225(b)(1)(A)(i)).  Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.*  Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are subject to mandatory detention.

However, noncitizens subject to detention under either sub-section of § 1225(b) may be temporarily paroled under 8 U.S.C. § 1182(d)(5)(A).  *See id.* at 288.  Section 1182 parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]"  8 U.S.C. § 1182(d)(5)(A).  The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding[.]"  8 C.F.R. § 212.5(b).  In other words, if a noncitizen has been granted parole, it means that a DHS official with authority decided there were either "urgent humanitarian reasons" or "significant public benefit" justifying the parole of that individual, and that the individual did not pose a security or flight risk.

Here, there is no evidence that § 1182(d)(5)(A) provided the statutory mechanism for Petitioner's nearly three-year "temporary" release, despite Respondents citing to that specific statute throughout their brief.  *See* Dkt. 5 at 4, 6.  Officer Ouk only states that Petitioner was "paroled into the United States" but says nothing about § 1182(d)(5)(A).  Ouk Decl., ¶ 6.  The DHS Form I-213 provided by Respondents indicates Petitioner was "paroled into the U.S. pending a 240 hearing" but similarly fails to mention § 1182(d)(5)(A).  Clark Decl., ¶ 2, Ex. 1 at 3.  On the current record, the Court cannot find that § 1182(d)(5)(A) provided the statutory mechanism for Petitioner's release otherwise purportedly required under § 1225(b).  *See Cuervo Marin v. Ice Field Off. Dir.*, C26-1071-KKE, 2026 WL 1123516, at *3 (W.D. Wash. Apr. 24, 2026) (rejecting the Government's contention that § 1182(d)(5)(A) authorized noncitizen's

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

release and instead finding noncitizen released on "conditional parole" under 8 U.S.C. § 1226(a) under circumstances similar to Petitioner's here).

Even if Petitioner was paroled under § 1182(d)(5)(A), its termination required, at minimum, statutory process.  Under federal regulation, parole can terminate automatically or upon written notice.  Parole is automatically terminated if a noncitizen departs from the United States or "at the expiration of the time for which parole was authorized[.]"  8 C.F.R. § 212.5(e)(1)(i), (ii).  Parole can also terminate (1) when its purpose has been accomplished or (2) when an authorized DHS official opines that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States.  8 C.F.R. § 212.5(e)(2)(i).  In either of those latter two scenarios, "parole shall be terminated upon written notice to the [noncitizen] and he or she shall be restored to the status that he or she had at the time of parole."  *Id.*

Here, there is no evidence Petitioner's parole automatically terminated, either from Petitioner leaving the United States or upon an expiration date provided at the time of Petitioner's release in 2023.  Further, Respondents do not assert that the purpose for which Petitioner's parole was authorized was accomplished or that an authorized DHS official made the requisite findings under § 212.5(e)(2)(i) discussed above.  In fact, it is entirely unclear from Respondents' briefing when and under what circumstances Petitioner's parole terminated, or whether it terminated at all.  To the extent any process occurred, such evidence of that process is not before the Court.

The record shows Petitioner was briefly detained and released into the United States on August 28, 2023.  She thereafter lived in the United States for nearly three years before being redetained by ICE—not due to her parole ending, but rather due to an immigration detainer

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

lodged while she was in custody for an unrelated criminal matter.  Regardless, whether Petitioner was initially paroled or released under some other available statutory mechanism, it is clear that Petitioner's nearly three-year and seemingly unconditional release was governed under DHS's *discretionary* detention authority, the revocation of which required process.  Accordingly, to the extent Respondents contend Petitioner's parole under § 1182(d)(5)(A) in 2023 gave them ongoing authority to revoke Petitioner's release without any additional process, the Court rejects that argument.  "That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."  *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) (citing *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1033–34, (N.D. Cal. July 17, 2025)).

### B.    *Mathews* and Due Process

The Court now turns to Petitioner's Due Process claim.  Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest.  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  The *Mathews* balancing test weighs: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens.  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B.*, 795 F. Supp. 3d at 1321 n.4 (collecting cases).

Petitioner contends all factors weigh in her favor.  Dkt. # 1, ¶¶ 96-104.  Respondents do not assess Petitioner's redetention under the *Mathews* framework but instead maintain their position that § 1225(b)(1) mandates her detention.  Dkt. 5 at 6-7.

1.    *Private Interest*

Petitioner's interest in remaining free from physical confinement is a substantial liberty interest.  *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025).  An individual who was initially released from immigration custody is deprived of this interest upon renewed detention.  *See Makuey v. Scott*, C25-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025).  Here, after Petitioner was briefly detained and released on August 28, 2023, she "took with [her] a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause."  *Ramirez Tesara*, 800 F. Supp. 3d at 1136; *see Makuey*, 2025 WL 3640900, at *4.  The possibility that Petitioner may have been released on humanitarian parole does not diminish that interest.  *Id.*; *Torres v. Hermosillo*, C25-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E. D. Cal. March 3, 2025).  Accordingly, the first *Mathews* factor favors Petitioner.

2.    *Risk of Erroneous Deprivation*

The risk of erroneous deprivation was high.  When Petitioner was paroled on August 28, 2023, the Government necessarily found that she posed "neither a security risk nor a risk of absconding[.]"  8 C.F.R. § 212.5(b).  Courts in this District find that the Government violates due process when an individual placed in removal proceedings and paroled is later redetained without a pre-deprivation hearing.  *E.g.*, *Flores Torres v. Hermosillo*, C25-02687-LK, 2026 WL 145715, at *2, 7–8 (W.D. Wash. Jan. 20, 2026) (finding noncitizen detained under Section 1225(b), released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), and subsequently redetained had due process right to notice and opportunity to be heard before parole revocation); *E-D-S-O- v. Hernandez*, C26-00785-RAJ, 2026 WL 1067036, at *4-5 (W.D. Wash. Apr. 20,

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

2026) (same).  Here, Respondents do not dispute Petitioner's assertion that her redetention occurred without pre-deprivation notice or an opportunity to be heard.  *See generally* Dkt. 5. And as noted above, if Petitioner *was* paroled under § 1182(d)(5)(A), there is no evidence Respondents followed applicable regulations when they revoked her parole without notice or making the requisite findings.  Finally, although Respondents do not argue it served as the basis for Petitioner's redetention in their return, it appears DHS redetained Petitioner because of her criminal charge.  However, Petitioner's criminal charge was pending when she was redetained. In other words, she was innocent.  Providing pre-deprivation process would have given Petitioner an opportunity to challenge the bases for her redetention and, given the circumstances of her redetention, there was value in additional safeguards.  The second *Mathews* factor weighs in Petitioner's favor.

                3.    *Governmental Interest*

While the Government has legitimate interests in enforcing the immigration laws, protecting the community, and ensuring that noncitizens appear for immigration proceedings, providing a brief, pre-deprivation custody hearing prior to redetention would not materially impede those interests.  Because Respondents do not discuss the *Mathews* framework, they do not identify a governmental interest advanced by Petitioner's redetention.  On this record, the Court does not independently identify a governmental interest that necessitated forgoing pre-deprivation process.

In sum, the *Mathews* factors favor Petitioner, habeas relief is warranted, and release is the appropriate and constitutionally required remedy.  *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

//

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

### C.     Remaining Claims and Relief

Petitioner seeks to permanently enjoin Respondents from redetaining her without written notice and a prior hearing before a neutral decisionmaker.  Dkt. 1 at 24.  To obtain a permanent injunction, a party must show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).  Although Petitioner has shown her redetention was unlawful, the present record lacks sufficient legal authority and factual development to establish a specific, real, and immediate threat of future redetention without process.  The request for injunctive relief is therefore denied without prejudice.

### IV.     CONCLUSION

For these reasons, the Court GRANTS in part the habeas petition, Dkt. 1, and ORDERS that Petitioner be RELEASED from immigration detention within **twenty-four (24) hours** under conditions in effect prior to Petitioner's redetention.  Respondents shall file a certification with the Court within **forty-eight (48) hours** that Petitioner has been released.  Petitioner's APA claims are denied as MOOT.  Petitioner's request for permanent injunctive relief is DENIED without prejudice.  Any fee petition shall be filed within the deadlines set by the EAJA, 28 U.S.C. § 2412.

Dated this 6th day of August, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10